UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ROLAND JENKINS,                                  :

                      Petitioner,    :   **REPORT AND RECOMMENDATION TO THE HONORABLE BARBARA S. JONES**

        - against -                           :

                                         :

J. FARRELL, Superintendent, Wallkill          07 Civ. 6937 (BSJ)(FM)
Correctional Facility,                                  :

                      Respondent.    :
------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    Introduction

        In this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, pro se petitioner Roland Jenkins ("Jenkins") alleges that his due process rights were violated because the New York State Department of Correctional Services ("DOCS") added a five-year period of post-release supervision required by statute to the sentence previously imposed by the state court following his plea of guilty to one count of Robbery in the First Degree in Supreme Court, New York County. Although Jenkins' claim has merit, his petition is time barred. Accordingly, I recommend that this proceeding be dismissed as untimely. In any event, even if Jenkins were able to overcome that obstacle, he would, at best, be entitled to a writ excising the administratively-imposed term of post-release supervision from his sentence. The People would still be able to seek a corrective order

in state court. Accordingly, reaching the merits would, as a practical matter, not result in any benefit to Jenkins.

II.     Background

    A.     Facts

On April 12, 2001, Jenkins approached a teenager in a subway car in Manhattan and threatened to stab him with a screwdriver if he did not give Jenkins money. (Ex. C at 1-2).[1] Jenkins then pushed the teenager against the wall and struck him with the screwdriver while his codefendant acted as a lookout. (Id. at 2). After forcibly taking the teenager's wallet and jacket, Jenkins punched him in the stomach and threw him to the floor. (Id.).

Following the teenager's return home, Jenkins and his codefendant telephoned him repeatedly, threatening harm to him and his family unless he paid them more money. (Id. at 2-3). At some point that night, both the teenager's parents and the police listened in on these telephone calls. (Id.). A detective, pretending to be the teenager's father, then negotiated a place to meet Jenkins to deliver the money. (Id. at 3).

---

[1] "Pet." or "Petition" refers to Jenkins' habeas petition, filed on May 29, 2007. (Docket No. 1). "Resp't's Mem." refers to the respondent's memorandum of law in opposition to Jenkins' Petition. (Docket No. 9). "Ex." refers to the exhibits attached to the declaration of Assistant Attorney General Lisa Fleischmann, dated January 17, 2008. (Docket No. 10). "Jenkins Aff." refers to the affidavit of Roland Jenkins in support of his motion to set aside his sentence, sworn to on September 7, 2006. "Jenkins Reply" refers to Jenkins' reply to Resp't's Mem., dated January 30, 2008. (Docket No. 12). "Jenkins Affirm." refers to Jenkins' affirmation regarding the timeliness of his Petition, dated August 17, 2007. (Docket No. 3).

With police looking on, the teenager's real father met Jenkins' codefendant at the arranged location. (Id.). The codefendant was arrested and later implicated Jenkins. (Id.).

    B.    Plea

On October 11, 2001, Jenkins pleaded guilty to one count of Robbery in the First Degree in satisfaction of all of the charges set forth in the indictment.[2] (Id. at 3-4).

    C.    Sentence and Notice of DOCS' Calculations

On November 19, 2001, Justice William A. Wetzel sentenced Jenkins to a determinate eight and one-half year prison term. (Id. at 4; Exs. G-H). The sentence and commitment order does not indicate that the court added any period of post-release supervision to this sentence, (see Jenkins Aff. (Attach.)), even though New York law required that a five-year period of post-release supervision be imposed, see N.Y. Penal Law § 70.45(2). According to Jenkins, Justice Wetzel never mentioned any term of supervision, nor is one reflected in any writing issued to him by the court, his lawyer, or the prosecutor. (Pet. at 2-3, 6-9, 13; Jenkins' Reply at 2-4). These sworn representations must be accepted, at least insofar as the trial court is concerned, because the sentencing transcript is missing. (See Ex. B (Attach.); Resp't's Mem. at 15-16).

Jenkins was taken into DOCS custody on December 20, 2001. (See Ex. B (Attachs. (Time Computation Form, dated Dec. 26, 2001 ("DOCS Form"); Letter from

---

    [2]    Jenkins also had been charged with Robbery in the Second Degree and Grand Larceny in the Second Degree. (Ex. B ¶ 6; Ex. C at 1).

3

Richard de Simone to Ass't Dist. Att'y William Beesch, Esq., dated Nov. 20, 2006))). Six days later, on December 26, 2001, DOCS computed Jenkins' maximum expiration and conditional release dates, which are set forth on the DOCS Form. (DOCS Form). The DOCS Form also bears the notation "PRS 05 00 00," which evidently was intended to reflect the fact that DOCS had added five years of post-release supervision to Jenkins' sentence. (Id.). During a telephone conference on March 20, 2008, Jenkins conceded that he received a copy of the DOCS Form containing this notation shortly after arriving at a DOCS facility. He nevertheless maintains that he did not understand the significance of the notation at the time.

    D.    Subsequent Procedural History

        1.    Motion to Set Aside the Judgment

Jenkins did not appeal his conviction. On September 7, 2006, however, he filed a motion to set aside his sentence pursuant to Section 440.20 of the New York Criminal Procedure Law ("CPL"). (Ex. A). In that motion, Jenkins alleged that his plea was "not knowing, voluntary, or intelligently made" because Justice Wetzel never told him about the five-year period of post-release supervision. (Jenkins Aff. ¶¶ 3-6). Jenkins also argued that the addition of a post-release term by DOCS was unlawful and had to be vacated. (Id. ¶ 1).

On January 26, 2007, Justice Wetzel denied Jenkins' Section 440.20 motion. (Ex. C at 7). In so doing, Justice Wetzel observed that Jenkins was unclear as to

4

the form of relief he was requesting, but that "the gravamen of [Jenkins'] motion seems to be that he wants to . . . have the post-release term of 5 years eliminated from [his] sentence." (Id. at 4-5). Because the Penal Law mandated that post-release supervision be made a part of every determinate sentence, Justice Wetzel held that Jenkins was not entitled to have the five-year term excised. (Id. at 5-6). The Justice further found that, although the sentence and commitment order made no mention of post-release supervision, Jenkins could not prove "what the court did or did not say at the time of the plea or the sentence because the stenographic record cannot be located." (Id. at 6). Finally, the Justice observed that the DOCS Form provided Jenkins with "ample notice" of the terms of his sentence, thereby giving him "an early opportunity to challenge the accuracy of the sentencing information contained therein." (Id. at 7).

On May 3, 2007, the Appellate Division, First Department, denied Jenkins' application for leave to appeal Justice Wetzel's decision. (Ex. F).

    2.    <u>Petition</u>

Jenkins' Petition is dated May 29, 2007, and was received by the Pro Se Office of this Court on June 7, 2007. (Docket No. 1). In his Petition, Jenkins argues that his plea was involuntary because the court failed to advise him of one of the consequences of his plea – namely, the five-year period of post-release supervision. (Pet. at 8). Jenkins also contends that the administrative addition of the five-year period was unlawful. (Id. at 9-13).

On August 2, 2007, Chief Judge Wood issued an order in which she directed Jenkins to submit an affirmation explaining why his Petition was not barred by the statute of limitations. (Docket No. 2). Jenkins did so on August 17, 2007, asserting that the Petition was timely because he did not learn that DOCS had added a period of post-release supervision to his sentence until 2006, after which he immediately filed his CPL § 440.20 motion to set aside the sentence. (See Jenkins Affirm.). On August 28, 2007, the case was reassigned to Your Honor; thereafter, it was referred to me. (Docket Nos. 4, 6-7).

III.   Discussion

   A.   Timeliness

      1.   Section 2244(d)(1)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must bring any habeas proceeding within one year of the latest of several triggering events. See 28 U.S.C. §§ 2244(d)(1)(A)-(D). In this case, the only potentially applicable limitations provisions are subsections (A) and (D) of the statute.

         a.   Section 2244(d)(1)(A)

Under Section 2244(d)(1)(A), the one-year period commences on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The Second Circuit has interpreted "direct review"

6

to include direct review by both the state courts and the United States Supreme Court on a writ of certiorari. Williams v. Artuz, 237 F.3d 147, 150 (2d Cir. 2001). Here, however, Jenkins never filed any direct appeal after he was sentenced. Accordingly, the limitations period under Section 2244(d)(1)(A) began to run thirty days after his sentencing, when his time to file a notice of appeal expired. See CPL § 460.10(1)(a); Bey v. Payant, No. 05 Civ. 0599 (RMB)(RLE), 2007 WL 1300779, at *3 (S.D.N.Y. May 2, 2007). Jenkins therefore was required to file his Petition by December 19, 2002 (one year plus thirty days after he was sentenced), for it to be timely.

Jenkins' Petition is dated May 29, 2007, which is approximately four and one-half years after the limitations period under Section 2244(d)(1)(A) expired. Moreover, his CPL § 440.20 motion to set aside his sentence cannot serve to toll the statute of limitations because it was filed on September 7, 2006, nearly four years after the limitations period had run. See Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005) ("To toll the AEDPA statute of limitations, the state petition must be . . . 'pending' during the tolling period."); Menjivar v. Sears, No. 06 Civ. 2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007) ("A § 440 motion . . . does not revive a period that has already lapsed."). Jenkins' Petition therefore is time barred under Section 2244(d)(1)(A).

      b.     Section 2244(d)(1)(D)

Section 2244(d)(1)(D) provides that the statute of limitations shall not begin to run until "the date on which the factual predicate of the claim . . . could have been

7

discovered through the exercise of due diligence." Jenkins argues that the limitations period under this provision therefore did not commence until he discovered that DOCS had added five years of post-release supervision to his sentence. (See Jenkins Affirm. at 1). Jenkins alleges that this was in June 2006, when other inmates informed him that DOCS had been "altering inmates['] sentences and disregarding their lawfully issued commitment orders." (See Pet. at 6; Jenkins Aff. ¶ 4).

To decide when the limitations period commences under Section 2244(d)(1)(D), a court must "determine when a duly diligent person in petitioner's circumstances would have discovered [the factual predicate]." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000). The relevant inquiry is when the facts could have been discovered through due diligence, "regardless of whether petitioner actually discovers the relevant facts at a later date." Adams v. Greiner, 272 F. Supp. 2d 269, 273-74 (S.D.N.Y. 2003) (quoting Wims, 225 F.3d at 188). Moreover, the petitioner bears the "burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." Yekimoff v. N.Y. State Div. of Parole, No. 02 Civ. 8710 (BSJ), 2004 WL 1542256, at *5 (S.D.N.Y. July 8, 2004) (citing Duamutef v. Mazzuca, No. 01 Civ. 2553 (WHP)(GWG), 2002 WL 413812, at *8-9 (S.D.N.Y. Mar. 15, 2002), and Sorce v. Artuz, 73 F. Supp. 2d 292, 298 (S.D.N.Y. 1999)).

In this case, Jenkins admits that he received the DOCS Form, which is dated December 26, 2001, shortly after it was prepared. (See Ex. B (Attach.)). Through

the DOCS Form, Jenkins was provided with important information concerning his release and maximum expiration dates. The DOCS Form also included the notation "PRS 05 00 00." (See id.). Although it certainly is understandable that the significance of this entry did not leap off the page when Jenkins first saw it, the fact remains that he did not file his motion to set aside Justice Wetzel's sentence until four years after the expiration of the one-year AEDPA limitations period. In his submissions to this Court, Jenkins has provided no explanation as to why he could not have discovered the significance of the entry regarding post-release supervision at an earlier time. He therefore has not met his burden with respect to this limitations provision. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (limitations period under Section 2244(d)(1)(D) "begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance"); accord Williams v. Phillips, No. 04 Civ. 4653 (DAB)(AJP), 2005 WL 1806161, at *10 (S.D.N.Y. Aug. 2, 2005).

   2.   Equitable Tolling

A petitioner may, in rare circumstances, be able to avoid the operation of the statute of limitations through the application of the doctrine of equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Having failed to establish his entitlement to have the running of the AEDPA

statute of limitations calculated under Section 2244(d)(1)(D), Jenkins clearly is not in a position to invoke equitable tolling. See Rodriguez v. New York, No. 01 Civ. 9374 (KMW)(AJP), 2003 WL 289598, at *20 (S.D.N.Y. Feb. 11, 2003) ("Although the equitable tolling doctrine contains a 'reasonable diligence' requirement similar (if not identical) to the 'due diligence' requirement of 28 U.S.C. § 2244(d)(1)(D), equitable tolling raises the bar considerably by also requiring 'extraordinary circumstances.'").

    B.    Merits

In any event, even if Jenkins were able to establish that his Petition was not time barred, the victory would be pyrrhic. As explained below, to the extent that Jenkins contends that his plea was rendered involuntary by Justice Wetzel's failure to advise him that he was subject to mandatory post-release supervision, he fails to state a claim cognizable on habeas review. Additionally, to the extent that he argues that DOCS' decision to add such a term after his sentencing was unlawful, the State would be entitled to seek his resentencing if he were to prevail. Accordingly, even if DOCS' imposition of a term of post-release supervision were countermanded, Jenkins likely will not have accomplished anything by the filing of his Petition.

        1.    Voluntariness of Jenkins' Plea

Jenkins apparently contends that his guilty plea was not entered knowingly or voluntarily because he never was advised that post-release supervision would be a mandatory part of his sentence. (See Pet. at 8, 10). In a federal criminal case, a

10

defendant who is not informed about the prospect of being placed on supervised release is entitled to vacate his plea unless the circumstances establish that the error was harmless. See, e.g., United States v. Good, 25 F.3d 218, 219-21 (4th Cir. 1994); United States v. Renaud, 999 F.2d 622, 624-25 (2d Cir. 1993); United States v. Bachynsky, 934 F.2d 1349, 1359-60 (5th Cir. 1991) (per curiam en banc decision), modified by United States v. Johnson, 1 F.3d 296, 300-01 (5th Cir. 1993). A state defendant seeking habeas relief under AEDPA, however, faces a higher burden. The petitioner must show that the state court's decision regarding his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In recommending the denial of a petition asserting a claim virtually indistinguishable from Jenkins' voluntariness claim, Magistrate Judge Katz recently explained:

> Unfortunately for Petitioner, there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea. Many federal courts in this Circuit have recently come to this same conclusion. See Menjivar v. Sears, No. 06-CV-2854 (JG), 2007 WL 2274892, at *4 (E.D.N.Y. Aug. 7, 2007) ("Though the New York Court of Appeals has held that post-release supervision is the sort of 'direct consequence' a defendant must be advised of prior to pleading guilty, see [People v. ]Catu, 4 N.Y.3d [242,] 245 [(2005)], the United States Supreme Court has not reached the same conclusion[.]"); Shabazz v. Perlman, No. 04 Civ. 4355 (LAP)(DFE), 2005 WL 2105533, at *6 (S.D.N.Y. Sept. 1, 2005) (court declined to apply Catu standard, and found that

> there is no Supreme Court precedent that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting guilty plea); Steele v. Filion, 377 F. Supp. 2d 332, 336 (W.D.N.Y. Apr. 20, 2005) (holding that guilty plea was knowing and voluntary when defendant was not told about mandatory PRS at time of sentencing, and "finding that the Appellate Division did not unreasonably apply clearly established Federal law"); see also Lockhart v. Chandler, 446 F.3d 721, 724 (7th Cir. 2006) (holding that the petitioner's due process rights were not violated because "[t]here is no Supreme Court precedent for the proposition that a defendant must be advised of a term of [mandatory supervised release] at the time he attempts to enter a plea of guilty[]").
>
> <u>Consequently, because the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction, the trial court's failure to inform Petitioner of his mandatory PRS cannot be a violation of clearly established federal law.</u> In other words, Petitioner's claim is without merit because there is no clearly established Supreme Court precedent for the trial court to have unreasonably applied.

See Sanchez v. Keller, No. 06 Civ. 3370 (JSR)(THK), 2007 WL 4927791, at *7-8 (S.D.N.Y. Dec. 4, 2007) (emphasis added).

Having failed to demonstrate a violation of clearly established federal law, Jenkins therefore is not entitled to habeas relief on the theory that his plea of guilty was involuntary.

  2. <u>Lawfulness of Post-Release Supervision Term</u>

  Evidently recognizing the weakness of his involuntary plea claim, Jenkins also argues that DOCS lacked the authority to impose a period of post-release supervision which was not part of the sentence originally pronounced by the trial judge.

  In <u>Earley v. Murray</u>, 451 F.3d 71, 75 (2d Cir. 2006), the Second Circuit held that the only proper components of a state prisoner's sentence are those imposed by a judge. As a consequence, a term of post-release supervision put into effect by an administrative agency such as DOCS is unlawful. <u>Id.</u> at 75-76. In reaching this conclusion, the <u>Earley</u> court relied on <u>Hill v. United States ex rel. Wampler</u>, 298 U.S. 460, 464 (1936), a case in which the Supreme Court clearly held that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court." <u>Earley</u>, 451 F.3d at 74-75.

  The respondent suggests that because the plea and sentencing minutes cannot be located, Jenkins' claim that he was never advised that a term of post-release supervision was being imposed is "unsubstantiated." (Resp't's Mem. at 15-16). The respondent also relies on the presumption of regularity of judicial proceedings. (<u>Id.</u> at 3; Ex. B at 5 n.4). However, in his papers, Jenkins has said under oath that the state court failed to advise him that he would be subject to post-release supervision. (Pet. at 2-3, 6-9, 13; Jenkins Reply ¶¶ 6, 8; Jenkins Affirm. at 2). Moreover, his statements in this regard are fully consistent with the written sentence and commitment order signed on the date of

his sentencing, which makes no mention of a period of post-release supervision. (See Jenkins Aff. (Attach.)). In these circumstances, because the only admissible evidence indicates that Jenkins was not advised of the five-year post-release supervision term, this Court must assume that Jenkins' representations are correct.

Accordingly, if his Petition were timely, Jenkins would be entitled to a writ of habeas corpus vacating the five-year period of post-release supervision and releasing him from any custody resulting from its imposition. See Earley, 451 F.3d at 76-77. In Earley, the Second Circuit expressly noted that its decision to vacate the unlawfully-imposed aspect of the petitioner's sentence was without prejudice to the state's right to move "in the New York courts to modify [his] sentence to include the mandatory [post-release supervision] term." Id. at 77. The Earley court expressed no opinion, however, as to whether this remained a viable option given the passage of time.

More recently, in People v. Sparber, No. 03946, 2008 WL 1860092 (N.Y. Apr. 29, 2008), the New York Court of Appeals confirmed that the administrative imposition of a term of post-release supervision is improper under CPL §§ 380.20 and 380.40. The court also noted that the sole "remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement." Accord Garner v. DOCS, No. 03947, 2008 WL 1860082 (N.Y. Apr. 29, 2008); see also Earley v. Murray, No. 03-CV-3104, 2007 WL 1288031, at *3 (E.D.N.Y. May 1, 2007) (concluding, on remand, that the appropriate remedy is to grant the writ but stay its execution so that the District Attorney may seek a nunc pro tunc

14

order correcting the sentence to include the term of post-release supervision). It therefore appears that this remedy would also be available to the State in this case if a writ of habeas corpus were to be issued.

IV.   Conclusion

This habeas proceeding was filed years after the AEDPA statute of limitations expired and therefore should be dismissed on that ground. However, even if the Court were to find that the Petition was timely filed, Jenkins would only be entitled to an order excising the term of post-release supervision from his sentence. Since he will not be eligible for conditional release until July 7, 2008, the State still would have ample time to seek a nunc pro tunc order correcting Jenkins' sentence by imposing the statutorily-required five-year period of post-release supervision. See Earley, 2007 WL 1288031, at *3 (describing the state court's failure to impose a period of supervision as a "ministerial error that may be rectified easily").

V.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Barbara S. Jones, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to

Judge Jones. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:    New York, New York
         May 27, 2008

*[signature]*
FRANK MAAS
United States Magistrate Judge

Copies to:

Roland Jenkins
Wallkill Correctional Facility
Rter. 208, Box G
Wallkill, New York 12589

Lisa Fleischmann, Esq.
Assistant Attorney General
Office of the Attorney General of New York State
Fax: (212) 416-8010